UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RONNIE BARTON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v.   ) | Case No. 12-CV-0460-JED-PJC |
| ) | |
| **ALLMERICA FINANCIAL BENEFIT,** ) | |
| **INSURANCE COMPANY** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

The Court has for its consideration plaintiff Ronnie Barton's "Application to Amend Complaint/Petition and Brief in Support" (Doc. 11) (the "Motion"), wherein Barton seeks to amend his original pleading (a petition removed from state court) to include class allegations. Defendant, Allmerica Financial Benefit Insurance Company ("Allmerica"), argues that the proposed amendment would be futile because the putative class could not be certified under Fed. R. Civ. P. 23.

**I.   Factual Background**

On or about April 9, 2012, Barton was involved in a car accident with an underinsured motorist. Barton had uninsured/underinsured motorist ("UIM") coverage with Allmerica and attempted to make a claim. Barton alleges that he was informed by Allmerica that his UIM benefits were unavailable because the limit of the third-party tortfeasor's liability was greater than the limit of Barton's UIM coverage. Based on these events, Barton filed a Petition in Tulsa County District Court on June 7, 2012, alleging breach of contract and bad faith against Allmerica. On August 17, 2012, Allmerica removed the case to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. § 1441. Barton alleges that

Allmerica breached its contract with him and acted in bad faith by wrongfully refusing to consider his UIM claim because the third party tortfeasor had liability coverage limits that exceeded the UIM policy's limits. He says this is so because Oklahoma law mandates that UIM coverage is primary and therefore the UIM insurer is liable for the entire loss regardless of the presence of other insurance. Barton further alleges that Allmerica had a pattern and practice of denying UIM claims on this basis. In reliance on that assertion, he now seeks to add class claims.

## II.     Standards

Federal Rule of Civil Procedure 15(a)(2), which governs the plaintiff's Motion, provides that a court should "freely give leave [to amend] when justice so requires." Courts generally deny leave to amend only on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety, City, and Cnty. of Denver*, 397 F.3d 1300, 1314 (10th Cir. 2005) (internal quotation omitted).

Here, Allmerica argues that the Court should deny the Motion on grounds of futility. "A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason...." *E. SPIRE Commc'ns, Inc. v. N.M. Pub. Reg. Comm'n*, 392 F.3d 1204, 1211 (10th Cir. 2004). Thus, a court may generally deny leave to amend where the proposed amendments fail to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6). *See Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999) ("The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim...."). Under the Rule 12(b)(6) standards, a court must determine whether the claimant has stated a claim upon which relief may be granted. A complaint must contain

enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 562. For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. *Id*. at 555; *Alvarado v. KOB–TV, L.L.C*., 493 F.3d 1210, 1215 (10th Cir. 2007); *Moffett v. Halliburton Energy Servs., Inc*., 291 F.3d 1227, 1231 (10th Cir. 2002).

**III.   Analysis**

In order to plead class action allegations, a complaint must state the following four prerequisites under Fed. R. Civ. P. 23(a) [1]:

> the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Barton seeks to plead a class under Rule 23(b)(3) (*see* Doc. 11-2, at 5). Accordingly, he must plead facts demonstrating that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In addition, the plaintiff must state facts sufficient to support the Rule 23 class prerequisites.

---

[1]   These four prerequisites to a class action are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *See generally, Ortiz v. Fibreboard Corp*., 527 U.S. 815, 828 n. 6 (1999); *Anderson v. Boeing Co*., 222 F.R.D. 521, 530 (N.D. Okla. 2004).

Barton's proposed amended complaint (Doc. 11-2) pleads all the necessary prerequisites for a class claim in accordance with Rule 23.  Specifically, the proposed amendment alleges that (i) there are potentially "thousands" of class members[2]; (ii) common questions of law and fact exist as to all class members; (iii) Barton's claims are typical of the putative class members; (iv) Barton and his counsel are adequate to represent the class; (v) common issues predominate over individual ones; and (vi) class action would be the superior method to adjudicate the class.  (*Id*., at 5).  The proposed amendment also supports those class action elements with sufficient factual allegations.  (*See id*., at 2-7).  For example, the proposed amended complaint discusses the alleged practices of Allmerica in denying Oklahoma residents UIM coverage on a uniform basis, i.e., where the third-party tortfeasor's liability insurance limits equal or exceed the limits of the insured's UIM coverage.  (*Id*., at 3-4).  The proposed amendment also lists issues which are purportedly common to the class and demonstrate liability as to all class members.  (*Id*., at 6-7).  These factual allegations push the proposed amended complaint across the line of plausibility.[3]  Accordingly, the Court finds that Barton's proposed amended complaint would not be subject to dismissal under the relevant Rule 12(b)(6) pleading standard and amendment is therefore not futile on that basis.

Other courts addressing proposed amendments to add class allegations have, in some instances, applied a heightened standard to the futility analysis – one which looks forward at whether the plaintiff may ultimately be able to certify the proposed class.  *E.g., cf. Presser v. Key Food Stores Coop., Inc*., 218 F.R.D. 53, 56 (E.D.N.Y. 2003) (holding that in addressing motion

---

[2]  Barton's proposed amended complaint does not specifically state that class members are so numerous that joinder would be impracticable, but this can be inferred from the allegation that class members potentially number in the "thousands."

[3]  The Court notes that Allmerica does not argue in its response that Barton has failed to adequately allege the necessary prerequisites in his proposed amendment.

to amend to add class allegations, Rule 15's futility analysis requires evaluation of "the likelihood that [the] proposed class will be certified pursuant to [Rule] 23") *with Barnett v. Cnty. of Contra Costa*, 2010 WL 2528523, at * 4 (N.D. Cal. June 18, 2010) (holding that Rule 23's requirements "should not be tested" on a motion to amend). The Tenth Circuit has not specifically addressed whether this heightened standard should be applied in evaluating proposed class amendments. *See Lymon v. Aramark Corp.*, No. 08–0386, 2009 WL 5220285, at * 3 (D.N.M. Dec. 12, 2009) (noting lack of Tenth Circuit authority and applying *Presser*'s "likelihood" of class certification test). This Court too has applied the *Presser* class certification analysis, evaluating whether certain elements of class certification have the potential to be proven by the plaintiff at the certification stage. *See Short v. USAA Cas. Ins. Co.*, 10-CV-766-TCK-PJC, 2012 WL 208091 (N.D. Okla. Jan. 24, 2012) (analyzing Rule 23 class certification standard with respect to proposed amendment to add class allegations).

As noted, the Court has concluded that Barton's proposed amendment, which includes class allegations, has not been found to be futile under the Rule 12(b)(6) standards. The Court further finds that, even were the more stringent standard noted above to be applied, Barton's proposed amendment would be permitted. Allmerica argues that amendment is futile because Barton cannot satisfy the numerosity or predominance prerequisites. Because Allmerica does not challenge the other Rule 23 prerequisites, the Court will examine only whether amendment would be futile with respect to numerosity and predominance under the heightened standard applied in *Presser* and *Short*.

Barton's proposed class is divided into two subclasses:

The first class of people includes:

All people in the State of Oklahoma who were/are beneficiaries of a UIM insurance contract issued by Defendant Allmerica who were (1) injured in a

5

covered automobile accident; (2) made a claim against their UIM coverage with Defendant Allmerica from July 7, 2008 through the present; and (3) had such claims denied at any point due in part to the fact that the third party tortfeasor had liability insurance policy limits equal to or greater than the applicable Allmerica UIM policy limits.

The second class of people includes:

All people in the State of Oklahoma who were/are beneficiaries of a UIM insurance contract issued by Defendant Allmerica who were (1) injured in a covered automobile accident; (2) made a claim against their UIM coverage with Defendant Allmerica from July 7, 2010 through the present; and (3) had such claims denied at any point due in part to the fact that the third party tortfeasor had liability insurance policy limits equal to or greater than the applicable Allmerica UIM policy limits.

(Doc. 11-2, at 4).

## ~ Numerosity ~

In the class certification process, the burden is upon the plaintiff to establish that the proposed class is so numerous as to make joinder impracticable. Fed. R. Civ. P. 23(a); *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). "There is 'no set formula to determine if the class is so numerous that it should be so certified.'" *Trevizo*, 455 F.3d at 1162 (quoting *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir.1978)).[4] In addition, parties are generally not required to "prove the identity of each class member or the specific number of members." *Childs v. Unified Life Ins. Co.*, 10-CV-23-PJC, 2011 WL 6016486 (N.D. Okla. Dec. 2, 2011) (citations omitted). Instead, because numerosity is such a fact-specific inquiry, the Court is granted "wide latitude" in making the determination. *Trevizo*, 455 F.3d at 1162.

Based upon the parties' respective submissions, it does not appear that it would be impossible for plaintiff to establish numerosity at the class certification stage. Allmerica's response includes the declaration of Petrina Johns (Doc. 12-1), which states that, from January 1,

---

[4] While some other circuits have adopted numbers which presumptively satisfy numerosity, the Tenth Circuit has not done so. *Trevizo*, 455 F.3d at 1162.

2008 to October 16, 2012 (the date of the declaration), 52 UIM claims in Oklahoma were closed without payment. While Allmerica states that those claims were closed for valid reasons, its own statements raise the possibility that such claims would fit within plaintiff's proposed subclass definitions depending on the merits of plaintiff's would-be class allegations. Ms. Johns' declaration states that 38 of the 52 individuals identified had their claims closed without payment because the individuals settled with the tortfeasor within the tortfeasor's liability limits. As Barton points out, these individuals may have chosen to accept the tortfeasor's liability limits after having been told that their UIM coverage was not available. Further, Barton argues that the pool of potential class members is larger than the 52 claims cited in Ms. Johns' declaration because the two proposed subclasses would include individuals who had a claim denied at any point based upon the existence of liability coverage which exceeds the UIM coverage limit, even if they were eventually paid. Given these allegations, it appears plausible that plaintiff could establish a number of plaintiffs sufficient to satisfy the numerosity prerequisite at the class certification stage, though the ultimate number is likely to be far below the "thousands" estimated by plaintiff. In any event, the question of whether joinder of the potential class members would be impracticable is one that is better answered at the certification stage.

### ~ Predominance ~

Rule 23(b)(3) requires a finding that:

[T]he questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Allmerica disputes Barton's ability to demonstrate that common questions of fact or law will predominate over individualized questions. More precisely, Allmerica maintains that Barton's allegations necessitate individualized inquiries with respect to: (1) the circumstances of each claim to determine the cause of delay, the duration of delay, and the reasonableness of the delay; (2) the amount of time between submission and ultimate payment of the claim; (3) the information known to the claims representative at the time the decision to withhold payment was made; and (4) the amount of damages suffered by each. (Doc. 12, at 13-15).

Barton argues in response that common questions predominate over any individual issues because he is challenging the practice of Allmerica (which he claims is likely uniform) in denying claims based solely on the existence of other insurance. Barton further contends that Allmerica's concerns enumerated above do not defeat predominance because they are either irrelevant to the proposed class claims or related to damages, which do not affect the predominance inquiry. (Doc. 14, at 5-7).

Based upon the allegations made by Barton, his proposed theory of liability, and the limited facts before the Court, it appears likely, at this early stage, that common questions would predominate over those that may be individualized. Under Barton's stated theory, the central question at issue with respect to the two proposed subclasses is whether Allmerica denied (or delayed, as the case may be) payment under the class member's UIM coverage in violation of Oklahoma law merely because the third-party tortfeasor's liability coverage had a limit equal to or greater than the UIM policy limit. This could be proved with evidence common to the class

by showing that Allmerica had a standard practice of denying coverage to its Oklahoma insureds on this basis. The remaining issues, such as duration of delay and amount of time between submission and ultimate payment of the claim, relate to damages and could potentially be dealt with through the use of a formula. *See, e.g., Clark v. State Farm Mut. Auto. Ins. Co.*, 245 F.R.D. 478, 488 (D. Colo. 2007) *aff'd*, 590 F.3d 1134 (10th Cir. 2009) ("[c]ommon questions of law or fact may predominate even if each individual plaintiff's damages requires a separate inquiry" and individualized damages can be determined through the use of a "mathematical formula"); *In re Home-Stake Prod. Co. Sec. Litig.*, 76 F.R.D. 351, 373 (N.D. Okla. 1977) (individualized damages issues "may be a matter of administering a formula derived from the resolution of defendants' liability, if any"). As with the Court's analysis of numerosity, the question of whether common issues predominate is one best answered at the certification stage.

Given the limited scope of the proposed class and the nature of the evidence which would logically be used to prove liability, the Court cannot say, at this early stage, that it would be futile for plaintiff to amend to add allegations that would potentially permit his breach of contract and bad faith claims to be litigated on a class-wide basis. The Court is also mindful of the fact that there is no allegation by Allmerica that it would be prejudiced by plaintiff's proposed amendment. In addition, while this action was removed to this Court in June 2012, very little has occurred in this litigation to date and no dispositive motions have yet been filed.

Based upon the Court's analysis as to the numerosity and predominance prerequisites, Barton's proposed amendment to add class allegations is not futile.[5]

---

[5] To be clear, in reaching this conclusion, the Court does *not* find that Barton's proposed class will be certified under the rigorous Rule 23 analysis which will ultimately be performed at the class certification stage. Indeed, facts revealed in the discovery process may ultimately show that Barton's proposed class does not meet the Rule 23 prerequisites.

**IT IS THEREFORE ORDERED** that plaintiff's "Application to Amend Complaint/Petition and Brief in Support" (Doc. 11) is **granted**. Plaintiff shall file his amended complaint no later than April 18, 2013.

**IT IS FURTHER ORDERED** that Allmerica shall not be precluded from re-urging any arguments made in response to plaintiff's motion to amend at later stages of the proceedings. The parties are ordered to file a second joint status report within 14 days of the filing of Allmerica's answer to Barton's amended complaint.

**SO ORDERED** this 4th day of April, 2013.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE